IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | | |
|---|---|---|
| THOMAS F. SCHMIDT, ET AL., | ) | CIVIL NO. 07-00356 HG-LEK |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| FIDELITY NATIONAL TITLE | ) | |
| INSURANCE COMPANY, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | | |

**ORDER DENYING PETITIONER JOEL EDMONDSON'S**
**<u>MOTION TO INTERVENE AS THIRD PARTY PLAINTIFF</u>**

Before the Court is Petitioner Joel Edmondson's Motion to Intervene as Third Party Plaintiff ("Motion"), filed on November 1, 2007.  Defendant Fidelity National Title Insurance Company ("Fidelity") filed its memorandum in opposition on November 19, 2007.  The Court finds this matter suitable for disposition without a hearing pursuant to Rule LR7.2(d) of the Local Rules of Practice of the United States District Court for the District of Hawai`i ("Local Rules").  After careful consideration of the Motion, supporting and opposing memoranda, and the relevant legal authority, Edmondson's Motion is HEREBY DENIED for the reasons set forth below.

<u>BACKGROUND</u>

The instant case arises from the transfer of Lot 71B in the Kaloko II Subdivision in Kailua-Kona, specifically identified as Tax Map Key No. (3) 7-3-27-71(B) ("the Property") from Third-

Party Defendant Damon L. Schmidt ("Damon") to his parents, Plaintiff/Counterclaim Defendant Thomas F. Schmidt ("Thomas") and Third-Party Defendant Lorinna Schmidt ("Lorinna").[1]

## I.  Factual Background

In July 2000, Damon obtained a $498,000.00 mortgage on the Property from Indymac Bank, F.S.B. ("Indymac" and "Indymac Mortgage").  In September 2001, Damon obtained a executed a Promissory Note for $250,000.00 in favor of Clearwater Investments, LLC ("Clearwater" and "Clearwater Note").  He also executed a mortgage encumbering the Property to secure the Clearwater Note ("Clearwater Mortgage").  The Clearwater Mortgage was junior to the Indymac Mortgage.  Buena Vista Investors, LLC ("Buena Vista") subsequently purchased the Clearwater Note and Mortgage.

On June 13, 2003, after Damon defaulted on the Clearwater Note and Mortgage, Buena Vista commenced foreclosure proceedings in state court, <u>Fidelity National Title Insurance Co., v. Damon Schmidt, et al.</u>, Civ. No. 03-1-0097K ("Foreclosure Action").  On July 29, 2005, Buena Vista obtained a Judgment for Interlocutory Decree of Foreclosure ("Foreclosure Judgment"), foreclosing the Clearwater Mortgage and ordering the Property to be sold at public auction, subject to the Indymac Mortgage.  The

---

[1] Damon, Thomas, and Lorinna will be referred to collectively as "the Schmidts".

Foreclosure Judgment was for: $553,679.30, representing principal and interest as of October 19, 2004; advances and interest on the advances; per diem interest of $137.96 per day from October 19, 2004 until paid; and attorney's fees and costs. The Foreclosure Judgment was affirmed on appeal.

After the entry of the Foreclosure Judgment, Damon executed an Apartment Deed transferring the Property to Thomas and Lorinna. The Apartment Deed was recorded in the Bureau of Conveyances on October 25, 2005. On October 13, 2005, Thomas and Lorinna obtained a $1,105,000.00 mortgage encumbering the Property from Option One Mortgage Corporation ("Option One" and "Option One Mortgage"). In connection with the Option One Mortgage, Fidelity issued a lender's title insurance policy to Option One. Due to an administrative error in its title search, Fidelity did not discover the Clearwater Mortgage or the Foreclosure Judgment. According to Fidelity, the Schmidts failed to disclose the Clearwater Mortgage and the Foreclosure Judgment to Option One or Fidelity. The proceeds of the Option One Mortgage therefore satisfied the Indymac Mortgage, but not the Clearwater Mortgage or the Foreclosure Judgment. To protect Option One's position, Fidelity purchased the Clearwater Note, the Clearwater Mortgage, and the Foreclosure Judgment from Buena Vista for $623,021.18. Fidelity also paid Buena Vista's attorney's fees of $87,000.00. On March 13, 2006, Buena Vista

assigned the Clearwater Note, the Clearwater Mortgage, and its interest in the Foreclosure Judgment to Fidelity.

## II. Procedural Background

Thomas filed the complaint in the instant case on July 3, 2007, alleging breach of contract and negligence. Thomas claims that he did not know about the Foreclosure Judgment and would not have purchased the Property if he had known about it. On July 25, 2007, Fidelity filed a Third-Party Complaint against Damon and Lorinna and a Counterclaim against Thomas. Fidelity has filed three applications for prejudgment garnishment: the Ex Parte Application for Issuance of Prejudgment Garnishee Summons, filed July 31, 2007 ("First Application"); the Application for Prejudgment Garnishee Process and Issuance of Garnishee Summons and Order, filed September 11, 2007 ("Second Application"); and the Ex Parte Application for Prejudgment Garnishee Process and Issuance of Garnishee Summons and Order as to Hawai`i Escrow & Title, Inc., filed September 18, 2007 ("Third Application") (all collectively "Applications").

The First Application sought, *inter alia*, the issuance of a garnishee summons to Fidelity National Title & Escrow of Hawai`i, Inc. ("Fidelity Hawai`i") for proceeds relating to the sale of certain properties, and an order that these proceeds be held in safekeeping for Thomas and/or Damon. Fidelity Hawai`i filed its Answer and Disclosure on September 25, 2007. Fidelity

Hawai`i states that it is in possession of:

> an earnest money deposit in the amount of $5,000 paid into Escrow No. 805956, with respect to a Deposit Receipt Offer and Acceptance for the sale by: (1) [Thomas] of real property identified as Tax Map Key No. 3-7-3-024-065-2 (Apt. B), and (b) [Damon] of real property identified as Tax Map Key No. 3-7-3-024-065-1 (Apt. A)[.]

[Answer and Disclosure of Fidelity Hawai`i at ¶ 1.]

In the Third Application, Fidelity alleged that the Schmidts may have wrongfully transferred the escrow account at Fidelity Hawai`i to Hawai`i Escrow & Title, Inc. ("Hawai`i Escrow"). Fidelity sought garnishment of the proceeds from the two sales. Hawai`i Escrow's disclosure, dated November 14, 2007,[2] states that the estimated closing date on the sale of Apartment A was November 20, 2007.

This Court held a hearing on the Applications on November 13, 2007. On November 1, 2007, Edmondson filed a joinder in Damon and Lorinna's October 24, 2007 reply memorandum in opposition to the Applications and counsel for Edmondson appeared at the November 13, 2007 hearing.

In the instant Motion, Edmondson seeks to intervene pursuant to Federal Rule of Civil Procedure 24(a) so that he could participate in the November 13, 2007 hearing. Edmondson states that he purchased the two parcels of real property, the escrow of which is the subject of the First Application and the

---

[2] Hawaii Escrow's disclosure was filed on December 6, 2007.

Third Application. He purchased the parcels more than a year ago and alleges that the garnishment is preventing him from closing escrow at Hawai`i Escrow. Thomas was Edmondson's real estate broker in the purchase. Thomas suggested that Edmondson seek independent counsel because he could not represent Edmondson's interest in the parcels because of his dispute with Fidelity. Edmondson asserts that the Applications may impair or impede his ability to protect his interest in the parcels. Edmondson argues that his purchase of the parcels has nothing to do with Fidelity's dispute with the Schmidts. He argues that the Court should vacate the garnishment for the reasons stated in Damon and Lorinna's memorandum opposing Fidelity's Applications.

Edmondson argues that the instant case is in its early stages and that the instant Motion is therefore timely. He is a resident of the Philippines and did not receive that Fidelity's Applications affected his interest notice until the last week of October 2007.

Edmondson states that he does not seek any proceeds at Hawai`i Escrow; he merely wants to remove the impediment to his title by opposing Fidelity's Applications and obtaining an order vacating the garnishment. He also states that he "wants to make sure that all the bills incurred or claimed for material and labor used in constructing the improvements to parcel 65A are paid from the proceeds of escrow." [Motion at ¶ 8.]

In its memorandum in opposition to the Motion, Fidelity states that Edmondson seeks to purchase Apartment A from Damon. Fidelity emphasizes that the property that Edmondson seeks to purchase is not the property which is the subject of this case. Edmondson has no interest in either the title policy that Fidelity issued to Option One, the Schmidts' debt to Fidelity, or the funds Fidelity seeks to garnish. Fidelity argues that the resolution of Thomas' and Fidelity's respective claims has no impact on Edmondson's ability to purchase Apartment A. There is nothing in the Garnishee Order implicating Edmondson, directing the stay or cancellation of the sale of Apartment A, or precluding Thomas from acting as Edmondson's real estate broker. Fidelity therefore argues that Edmondson does not have a significant protectable interest relating to the property or the transaction that is the subject of this case. Further, Fidelity argues that there is no evidence supporting the Schmidts' and Edmondson's claim that the sale of Apartment A cannot close because of the garnishee orders or because of this case. Thus, the disposition of this action will not impair or impede Edmondson's purchase.

Finally, Fidelity argues that the Motion is technically deficient because Edmondson did not attach a proposed complaint in intervention as required by Rule 24©. Fidelity argues that the Court can deny the Motion on this basis alone, particularly

because it is impossible to discern from the Motion what types of claims Edmondson alleges.

## DISCUSSION

### I. Rule 24(c)

A motion to intervene "must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). Fidelity argues that Edmondson's failure to include a proposed complaint in intervention is sufficient grounds to deny the Motion. The Ninth Circuit, however, has held that courts may grant a motion to intervene without an accompanying pleading if the motion "fully stated the legal and factual grounds for intervention." Beckman Indus., Inc. v. Int'l Ins. Co., 966 F.2d 470, 474 (9th Cir. 1992). Although the Court does not encourage parties to disregard the requirement of an accompanying pleading, the Court will consider the merits of Edmondson's Motion because it contains a sufficient statement of the legal and factual arguments in support of intervention.

### II. Intervention of Right

Rule 24(a) provides:

(a) Intervention of Right. On timely motion, the court must permit anyone to intervene who:
    (1) is given an unconditional right to intervene by a federal statute; or
    (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the

> action may as a practical matter impair or impede
> the movant's ability to protect its interest,
> unless existing parties adequately represent that
> interest.

Fed. R. Civ. P. 24(a). Edmondson does not argue that he has a statutory right to intervene. In order to intervene pursuant to Rule 24(a)(2), he must show that:

> (1) the intervention application is timely; (2)
> the applicant has a significant protectable
> interest relating to the property or transaction
> that is the subject of the action; (3) the
> disposition of the action may, as a practical
> matter, impair or impede the applicant's ability
> to protect its interest; and (4) the existing
> parties may not adequately represent the
> applicant's interest.

Prete v. Bradbury, 438 F.3d 949, 954 (9th Cir. 2006) (citation and internal quotation marks omitted). The proposed intervenor has the burden of establishing these elements, but courts interpret the elements broadly in favor of intervention. See id.

**A.   Timeliness**

As the putative purchaser of Apartment A, Edmondson alleges that he has an interest in the pre-judgment garnishment process sought by the Third Application, filed on September 18, 2007. This Court held a hearing on the Applications on November 13, 2007. Edmondson filed the instant Motion on November 1, 2007. In the Motion, Edmondson states that, because he resides in the Philippines, he did not receive notice that the Applications may affect his interests until the last week of October. This Court finds that, under the circumstances of the

case, Edmondson's Motion was timely.

    **B.**     <u>**Significant Protectable Interest**</u>

Thomas' claims in the instant case arise from Fidelity's failure to include the Clearwater Mortgage and the Foreclosure Judgment in the title report that it prepared in connection with the Option One Mortgage.  Fidelity's Counterclaim against Thomas and Third-Party Complaint against Damon and Lorinna allege that Damon fraudulently transferred the Property to Thomas and Lorinna and that the Schmidts failed to disclose the Clearwater Mortgage and the Foreclosure Judgment to Fidelity. Edmondson does not claim an interest in the Property, nor was he involved in either Fidelity's issuance of the title insurance policy or Thomas and Lorinna's purchase of the Property from Damon.  Edmondson claims an interest in Apartment A, the sale proceeds of which are subject to this Court's Garnishee Summons and Order in connection with the First Application and the Third Application.

This Court therefore finds that Edmondson does not have a significant protectable interest relating to the property or transaction that is the subject of the action.  For the sake of completeness, however, this Court will address the remaining factors.

    **C.**     <u>**Impairment of Interest**</u>

Assuming, *arguendo*, that this Court found Edmondson's

interest in Apartment A to be a significant protectable interest, this Court would not find that the disposition of the instant action may impair or impede his ability to protect that interest. Edmondson has alleged that the garnishment in this action prevents him from closing escrow on the sale. Nothing in this Court's Garnishee Summons and Orders prevents Damon from selling Apartment A. They merely requires the applicable escrow company to garnish the proceeds of the sale. In fact, according to Hawai`i Escrow's disclosure, the closing was scheduled for November 20, 2007.

### D. **Adequate Representation**

This Court also finds that Damon and Lorinna will adequately represent Edmondson's interest in Apartment A. "When an applicant for intervention and an existing party have the same ultimate objective, a presumption of adequacy of representation arises. If the applicant's interest is identical to that of one of the present parties, a compelling showing should be required to demonstrate inadequate representation." Prete, 438 F.3d at 956 (citation omitted). Both Edmondson and Damon and Lorinna opposed the Applications and sought to have the garnishment vacated. They all want the sale to go forward. Edmondson filed a joinder in Damon and Lorinna's October 24, 2007 reply memorandum in opposition to the Applications; Edmondson did not advance any of his own arguments. Edmondson's ultimate objective

11

with regard to Apartment A is therefore identical to Damon's and Lorinna's and he has not shown that their representation of that objective would be inadequate.

This Court therefore finds that Edmondson is not entitled to intervention as of right.

## III. **Permissive Intervention**

Rule 24(b) states, in pertinent part:

(b) Permissive Intervention.
(1) In General.  On timely motion, the court may permit anyone to intervene who:
    (A) is given a conditional right to intervene by a federal statute; or
    (B) has a claim or defense that shares with the main action a common question of law or fact.

Fed. R. Civ. P. 24(b).  Edmondson has not identified any statute that confers a conditional right to intervene in this case. Further, Edmondson has not alleged any independent claims; he essentially seeks to reiterate Damon and Lorinna's position that the Court should vacate its Garnishee Summons and Orders.  This Court therefore finds that permissive intervention is not warranted in this case.

## **CONCLUSION**

On the basis of the foregoing, Edmondson's Motion to Intervene as Third Party Plaintiff, filed on November 1, 2007, is HEREBY DENIED.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAI`I, December 12, 2007.



   /S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States Magistrate Judge

**THOMAS SCHMIDT, ET AL. V. FIDELITY NATIONAL TITLE INSURANCE COMPANY, ET AL; CIVIL NO. 07-00356 HG-LEK; ORDER DENYING PETITIONER JOEL EDMONDSON'S MOTION TO INTERVENE AS THIRD PARTY PLAINTIFF**