IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

THOMAS F. SCHMIDT,                )   CIVIL NO. 07-00356 HG-LEK
                                  )
            Plaintiff,            )
                                  )
        vs.                       )
                                  )
FIDELITY NATIONAL TITLE           )
INSURANCE COMPANY, a California   )
Corporation, JOHN DOES 1-10,      )
JANE DOES 1-10, DOE               )
CORPORATIONS, PARTNERSHIPS        )
and/or OTHER ENTITIES 1-10,       )
                                  )
                                  )
            Defendants.           )
                                  )
_____ )
                                  )
FIDELITY NATIONAL TITLE           )
INSURANCE COMPANY, a California   )
Corporation,                      )
                                  )
            Defendant/Third-      )
            Party Plaintiff,      )
                                  )
        vs.                       )
                                  )
DAMON L. SCHMIDT and LORINNA      )
SCHMIDT,                          )
                                  )
            Third-Party           )
            Defendants.           )
                                  )
_____ )

**ORDER GRANTING DEFENDANT/COUNTERCLAIMANT/THIRD-PARTY PLAINTIFF
NATIONAL TITLE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT
AGAINST PLAINTIFF/COUNTERCLAIM DEFENDANT THOMAS F. SCHMIDT ON THE
COMPLAINT, FILED JULY 3, 2007**

    Plaintiff Thomas Schmidt brought this case against Fidelity

National Title Insurance Co., alleging breach of contract and

1

negligence for Fidelity's failure to discover and disclose a mortgage and judgment lien encumbering property transferred to Thomas Schmidt and his wife, Lorinna Schmidt, by their son, Damon Schmidt.  Plaintiff seeks to recover from Fidelity under express and implied contract theories based on a preliminary title report and title insurance policy issued by Fidelity, not to Thomas or Lorinna Schmidt, but to the Schmidts' lender.  Plaintiff also seeks to recover under a negligence theory, contending that Fidelity had a duty to him to conduct a reasonable title search and disclose any title defects.

For the reasons set forth below, Thomas Schmidt's contract and tort claims both fail as a matter of law.  Thomas Schmidt is not a named insured under the Policy and the facts do not give rise to an implied contract or to any third-party beneficiary rights.  Thomas Schmidt's tort claim fails because, even assuming Hawaii courts were to recognize a duty owed by a title insurer to a party other than the insured, Schmidt could not have justifiably relied on a title report or policy which failed to disclose the mortgage and judgment lien.  The evidence shows that Schmidt knew of, and in fact testified in, the state foreclosure proceedings which gave rise to the judgment lien encumbering the property.

Defendant/Counterclaimant/Third-party Plaintiff Fidelity National Title Insurance Company's Motion for Partial Summary

2

Judgment Against Plaintiff/Counterclaim Defendant Thomas F. Schmidt on the Complaint, filed July 3, 2007, is **GRANTED**.

<u>**PROCEDURAL HISTORY**</u>

On July 3, 2007, Plaintiff Thomas Schmidt filed a Complaint (Doc. 1) against Fidelity National Title Company ("Fidelity").

On July 25, 2007, Fidelity filed a Counter-Claim against Schmidt and a Third-Party Complaint against Damon Schmidt and Lorinna Schmidt. (Doc. 5.)

On March 14, 2008, Fidelity filed a "Motion for Partial Summary Judgment Against Plaintiff/Counterclaim Defendant Thomas F. Schmidt on the Complaint" (Doc. 72, "Motion"), along with a Concise Statement of Facts in support. (Doc. 73.)

On April 10, 2008, Third-Party Defendant Lorinna Schmidt filed a Memorandum in Opposition to Fidelity's Motion for Partial Summary Judgment, in which Thomas Schmidt joined, along with a Separate and Concise Counter-Statement of Material Facts (Doc. 81, 87, collectively, "Opposition".) The Schmidts separately filed numerous declarations in support of their Opposition. (Doc. 83, 84, 85, 86.)

On April 14, 2008, Lorinna Schmidt filed a Notice of Additional Citation in further opposition to Fidelity's Motion. (Doc. 88.)

On April 17, 2008, Fidelity filed a Reply. (Doc. 89, "Reply".)

In Fidelity's Reply, Fidelity moves to strike Lorinna Schmidt's Notice of Additional Citation for failure to comply with Local Rules 7.4. and 7.8 by not obtaining leave of court to file supplemental briefing.  Schmidt's Notice contains very limited argument and cites only one additional case.  As such, the Court denies Fidelity's request to strike.

On June 2, 2008, Fidelity filed a First Amended Third-Party Complaint against Damon and Lorinna Schmidt and a First Amended Counterclaim against Thomas Schmidt, adding breach of contract and breach of covenants claims.  (Doc. 99.)

Pursuant to Local Rule 7.2(d), the Court elected to decide Fidelity's Motion without a hearing.

## BACKGROUND

### *Plaintiff Thomas Schmidt's Complaint*

On June 3, 2007, Plaintiff Thomas Schmidt filed a Complaint against Defendant Fidelity National Title Insurance Co. ("Fidelity") asserting two causes of action based on Fidelity's failure to identify a $700,000 judgment lien on property purchased by Plaintiff Schmidt and his former wife, Lorinna Schmidt.  Plaintiff's first cause of action sounds in breach of contract for Fidelity's alleged breach of a title insurance policy issued to Plaintiff's lender, Option One Mortgage Corporation ("Option One").  Plaintiff's second cause of action sounds in tort for Fidelity's alleged negligence in failing to

4

report to Plaintiff that there was a judgment lien recorded against the property.  Plaintiff contends that had he known of the existence of the judgment lien he would not have purchased the property.  (Compl. at ¶ 8.)  Plaintiff seeks return of the monies that Plaintiff paid for the property; $1,100,000 borrowed from his lender Option One Mortgage Corporation, plus approximately $800,000 which Plaintiff expended from his funds. (Compl. at ¶ 9.)

**Fidelity's Counterclaim Against Thomas Schmidt and Third-Party Complaint Against Lorinna and Damon Schmdit**

On July 25, 2007, Fidelity filed a Counterclaim against Schmidt alleging fraudulent inducement, negligent misrepresentation, fraudulent transfer, conversion, unjust enrichment, disgorgement, assumpsit, and civil conspiracy, based on the Schmidts' failure to disclose material facts about the Buena Vista mortgage, foreclosure lawsuit, and Judgment for IDF despite their knowledge of the same and Damon's transfer of the Property to his parents in an alleged effort to defraud Fidelity and avoid the Judgment for IDF.

On that same date, Fidelity also filed a Third-Party Complaint against Damon L. Schmidt and Lorinna Schmidt, alleging similar causes of action.

On June 2, 2008, Fidelity filed a First Amended Third-Party Complaint against Damon and Lorinna Schmidt and a First Amended Counterclaim against Thomas Schmidt, adding breach of contract

and breach of covenants claims.  (Doc. 99.)

### Judgment for Interlocutory Decree of Foreclosure and Subsequent Transfer of Property from Damon Schmidt to his parents, Thomas and Lorinna Schmidt

The property at issue in this case is real property located at 73-4613 Kukuki Street in Kailua-Kona, Hawaii, specifically identified as Tax Map Key No. (3) 7-3-024-71-02 ("Property").  On July 29, 2005, there was a Judgment of Interlocutory Decree of Foreclosure, filed in <u>Bunea Vista Investors, LLC v. Damon Schmidt et. al.</u>, Civ. No. 03-1-0097K, Circuit Court of the Third Circuit, State of Hawaii and recorded in the Bureau of Conveyances, State of Hawaii as Document No. 2006-009107 on January 13, 2006. (Fidelity CSF at Exh. 1 ("Judgment for IDF".)  The state court entered the Judgment for IDF in favor of Buena Vista Investors, LLC[1], who held a second mortgage on the Property, and against Damon Schmidt. (<u>Id.</u>)  IndyMac Bank held a first mortgage on the Property.  The Judgment for IDF was made subject to the Indymac Mortgage.

Plaintiff Thomas Schmidt was a testifying witness in the state foreclosure action.  (Fidelity CSF at Exh. 2 "Amended Findings of Fact, Conclusions of Law, and Order" in <u>Buena Vista Investors, LLC v. Damon Schmidt, et al</u>.).

---

[1] The promissory note, dated September 4, 2001, was originally made by Damon Schmidt in favor of Clearwater Investments, LLC, but was subsequently transferred to Bunea Vista.  (Judgment for IDF at 2.)

A few months after the state court entered the Judgment for IDF, Third-Party Defendant Damon Schmdit, transferred the property to his parents, Thomas and Lorinna Schmidit, by an Apartment Deed, recorded in the Bureau of Conveyances on October 25, 2005. (Fidelity CSF at Exh. 3 ("Apartment Deed".)  At the time of the transfer Damon was liable for the Indymac Mortgage and to Buena Vista on the foreclosed mortgage as evidenced by the Judgment for IDF.

### The Option One Loan and Mortgage

In purchasing the Property, Thomas and Lorinna Schmidt obtained a $1,105,000.00 loan from Option One as evidenced by the Mortgage in favor of Option One, dated October 13, 2005, and recorded in the Bureau of Conveyances. (Fidelity CSF at Exh. 4 ("Option One Mortgage").  The Option One mortgage secures the Schmidts' indebtedness to Option One. (Id.)  The funds from the Option One mortgage paid off IndyMac Bank.  The Judgment for IDF in favor of Buena Vista continued to encumber the Property.

### The Title Insurance Policy Issued to Option One

In connection with the Option One Mortgage, Fidelity issued to Option One, as the insured, a lender's title insurance policy, dated October 25, 2005. (Fidelity CSF at Exh. 5 ("Policy")).  Thomas Schmidt is not listed as an insured under the Policy.  Lorinna or Damon Schmidt are also not listed as insureds under the Policy.  The Policy insured Option One against "loss or

7

damage" sustained due to "[a]ny defect in or lien or encumbrance
on the title" and "[t]he priority of any lien or encumbrance over
the lien of the insured [Option One Mortgage]." (Id.)

Fidelity did not discover the Buena Vista mortgage or
Judgment for IDF. (Counterclaim at ¶ 17.) Neither the Policy
nor the preliminary title report disclosed the Judgment for IDF
in favor of Buena Vista. As a result, and to fulfill its
obligations under the Policy issued to Option One as the insured,
Fidelity paid off the Buena Vista promissory note and second
mortgage in full and Buena Vista assigned the note and mortgage,
along with the Judgment for IDF, to Fidelity. (Doc. 24 at Exh. 8
& 9.)

Fidelity foreclosed and Judge Ibarra in the Third Circuit
Court, State of Hawaii approved the sale price of $800,000.
(Doc. 85, Declaration of Gary Dubin at ¶ 24.) The Schmidts are
continuing to challenge the foreclosure proceeding in state
court. (Id. at 24-26.)

### *Other Facts*

The Schmidts have provided several declarations with
voluminous attachments which they contend are relevant to the
Court's disposition of Fidelity's motion for partial summary
judgment as to the two causes of action set forth in Thomas
Schmidt's Complaint. The declarations and documents, which,
among other things, detail events surrounding the transfer,

8

refinancing, and foreclosure of the Property do not present facts material to the issues presently before this Court:

(1) Whether Thomas Schmidt has contract claims against Fidelity under the Policy; and

(2) Whether Fidelity can be liable in tort to Thomas Schmidt under the Policy.

**ANALYSIS**

In the Opposition, Thomas and Lorinna Schmidt concede that there is no express contract between Thomas Schmidt or Lorinna Schmidt and Fidelity or any duty arising from any *direct* relationship between them that can support a negligence claim. (Opposition at 4.)[2]

> ***Schmidt Is Neither a Named Insured Nor a Third Party Beneficiary Under the Policy***

As the Schmidts' apparently concede, Plaintiff does not have a direct contract claim against Fidelity.  An insurer's duty is contractual in nature and depends on the express language of the Policy.  See Ticor Title Ins. Co. of California  v. American Resources, Ltd., 859 F.2d 772, 774 (9th Cir. 1988).  Generally, the contractual duty of a title insurance company runs only to

---

[2] While Thomas Schmidt is technically the only party with pending claims against Fidelity, the Court refers to both Thomas and Lorinna Schmidt throughout this Order.  Lorinna Schmidt has filed an extensive opposition to Fidelity's motion and the analysis applicable to Thomas Schmidt's claims would likewise apply to any claims made by Lorinna Schmidt.

the named insured under the policy and not to third parties.  See Simmons v. Puu, 94 P.3d 667, 677 (Haw. 2004) (implied covenant of good faith under insurance policy runs only to insured); Hicks v. Saboe, 555 A.2d 1241, 1243 (Pa. 1989) ("the duty of a title insurance company runs only to its insured, not to third parties who are not party to the contract"); Grable v. Citizens Nat. Trust and Sav. Bank of Riverside, 331 P.2d 103, 104 (Cal.App.2d 1958) (loan policy naming lender as insured provided no coverage to borrowers even though they were required to procure and pay for policy in order to receive loan); see also Mann v. Glens Falls Ins. Co., 541 F.2d 819, 821 (9th Cir. 1976) (new owners of house not named as insureds were not entitled to coverage under fire insurance policy; "mortgagor is not entitled to insurance protection under a mortgagee-only type insurance policy").  Neither Thomas nor Lorinna Schmidt are named insureds under the Policy.

Schmidt's contract claim under a third party beneficiary theory likewise fails.  A borrower is not generally a third party beneficiary under a title policy prepared for the lender.  See Siegel v. Fidelity Nat'l Title Ins. Co., 54 Cal. Rptr. 2d 84, 90 (Cal. Ct. App. 1996) (if borrower desires insurance coverage, it is that party's obligation to request a policy and pay for it); Ortego v. First Am. Ins. Co., 569 So.2d 101, 106 (La. Ct. App. 1990) (borrower is not third party beneficiary under loan policy

even if borrower pays premium).

Third party beneficiary status is ordinarily a question of fact, but may be resolved as a matter of law, where, as here, there is no evidence that the third party was an intended beneficiary.  See Jou v. Dai-Tokyo Royal State Ins. Co., 172 P.3d 471, 480 (Haw. 2007) (citing Elsner v. Farmers Ins. Group, Inc., 220 S.W.3d 633, 636 (Ark. 2005) (holding that the trial court properly granted defendant-appellee's motion to dismiss inasmuch as "there [was] nothing in the contract to indicate that [plaintiff-appellant] was an intended third-party beneficiary...."); see also Salazar v. Nationwide Mut. Ins. Co., 1997 WL 410530, at *1 (9th Cir. 1997) (applying California law) ("an injured third-party has standing to bring a breach of contract action directly against an insurance company, if she can show that she is an intended beneficiary or a member of a class of persons that the insurance contract expressly intended to benefit.  See Cal.Civ.Code § 1559 (1997); Jones v. Aetna Cas. & Sur. Co., 33 Cal.Rptr.2d 291, 295 (1994)").

In determining whether a third party beneficiary relationship exists, Hawaii courts look to the Restatement (Second) of Contracts § 302 (1981), which provides as follows:

> (1)  Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either

11

(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.

Jou, 172 P.3d at 480-481.

Schmdit has not and cannot satisfy the definition of intended third party beneficiary. The Policy is a lender's title policy, not a borrower's title policy, and there is no evidence that Fidelity intended to assume a direct obligation to Schmidt under the Policy. Jou, 172 P.3d at 480; 17 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 241:25 at 241-34 (2000) ("In order for a third party to maintain an action against an insurer, an intent to make the obligation inure to the benefit of such person must clearly appear in the contract of insurance, and, if any doubt exists, the contract should be construed against such intent.") (footnotes omitted.).

The borrower's relationship with the lender does not make it an intended third-party beneficiary. Indeed, the distinction between a lender's title policy and a borrower's title policy is well-recognized. The purpose of such a distinction is apparent when circumstances arise, similar to those that exist here, in which the title insurer settles claims with the lender under the lender's insurance policy and then sues the borrower for fraudulently representing title. See Chicago Title Ins. Co. v.

12

Seko Investment, Inc. (In Re Seko Investment, Inc.), 156 F.3d
1005, 1007 (9th Cir. 1998).

### *Neither The Parties' Relationship Nor the Preliminary Title Report Created an Implied Contract*

In their Opposition, Thomas and Lorinna Schmdit attempt to
circumvent established title insurance contract law by arguing
that they are entitled to relief under an implied-in-fact
contract theory based on the factual relationship of the parties.
With respect to implied contracts, the Hawaii Supreme Court has
stated as follows:

> An implied contract, in the proper sense, is where the
> intention of the parties is not expressed, but an
> agreement in fact, creating an obligation, is implied or
> presumed from their acts, as in the case where a person
> performs services for another, who accepts the same, the
> services not being performed under such circumstances as
> to show that they were intended to be gratuitous, or
> where a person performs services for another on request.

Kemp v. State of Hawaii Child Support Enforcement Agency, 141
P.3d 1014, 1038 (Haw. 2006) (quoting Durette v. Aloha Plastic
Recycling, 100 P.3d 60, 74 (Haw. 2004) (emphasis added) (internal
citations and quotation marks omitted) (citing Wall v. Focke, 21
Haw. 399, 404-05 (Haw. Terr. 1913)).  An essential element of an
implied contract is the mutual intent to form a contract.  See
Kemp, 141 P.3d at 1038.

The Schmidts' implied contract theory fails.  The Schmidts'
implied contract theory is based on the fact that they paid the
title insurance premium to Fidelity at closing for the Policy

issued to Option One.  The Schmidts contend that by accepting their payment and issuing the Policy to Option One, Fidelity implicitly assented to the terms of an implied contract thereby giving them rights under the Policy.

There is case law to the contrary.  The mere payment of the title insurance premium does not give rise to an implied contract.  See Kenny v. Safeco Title Ins. Co., 169 Cal.Rptr. 808, 810 (Cal. App. 3d 1980)(rejecting argument that payment of title insurance policy premium created a "duty of care" on the part of the title insurer or rendered the agreement between the buyer and the title insurer a third party beneficiary contract for benefit of appellant).  It is easy to see why this is the law when considering that it is customary for the seller to pay the title insurance premium for the title policy issued to the borrower. In light of this fact, employing the Schmidts' theory would give rise to an implied contract between the title insurer and a noninsured in virtually every case.

None of the cases cited in the Schmidts' Opposition support their implied-in-fact contract theory in the title insurance context.  The Schmidts rely on Barnes v. First American Title Insurance Co., 2006 WL 2265553 at *5 (D. Ohio 2006), Randelman v. Fidelity National Title Insurance Co., 465 F.Supp.2d 812, 819 n.2 (D. Ohio 2006), and Lewis v. First American Title Insurance Co., 2007 U.S. Dist. LEXIS 71214 (D. Idaho 2007).  These three cases

14

involve class action lawsuits by homeowner-borrowers who, in conjunction with refinancing their mortgages, paid a premium rate for lenders' title insurance policies without being informed of the opportunity to pay a lower premium rate as provided by law. The plaintiff homeowner-borrowers were not alleging implied title insurance contracts. Rather, the homeowners-borrowers, who paid the title insurance premiums, were alleging injury because the insurers made them pay higher insurance premiums than allowed by law. The courts recognized that the homeowner-borrowers had standing to bring claims regarding the premium rate under an implied-in-fact contract theory even though they were not the named insureds under the title insurance policies. The courts recognized an implied-in-fact contract under these facts because the plaintiffs paid the premiums for the title insurance and the insurers, in turn, owed an obligation to the plaintiffs to charge a rate that complied with state law. These cases do not stand for the proposition that a borrower who pays the title insurance premium has an implied contract with the title insurer to receive *benefits* under a title insurance policy issued to the lender.

The Schmidts' attempt to rely on the preliminary title report to create an implied contract likewise fails. The preliminary title report clearly states that the proposed insured is "The Mortgage Group" and not the Schmidts. (Compl. at Exh. A (Preliminary Title Report, dated 10/14/06); Declaration of

15

Michael Nekoba at Exh. A (Preliminary Title Report, dated 9/8/05.)  For the same reasons as set forth above, the elements of an implied-in-fact contract are not satisfied.   There is no evidence of mutual intent to contract.  Moreover, the face page of the preliminary title report clearly states that it is "solely for the purpose of facilitating the issuance of a title insurance policy and no liability is assumed hereby" and that it "is not a written representation as to the condition of title and may not list all liens, defects, and encumbrances affecting title to the land." (Id.)   The Schmidts have not pointed to any cases indicating that Hawaii courts would recognize a contract claim based on a preliminary title report despite such clauses.   Nor have the Schmidts pointed to case law recognizing a contract claim by a noninsured based on the preliminary title report.

### *Fidelity is Not Liable to Schmidt in Tort for Its Alleged Negligent Failure to Search and Disclose Title the Defect*

In their Opposition, the Schmidts concede that there is no "duty specifically emanating from any direct relationship between them [the Schmidts and Fidelity] within which as a matter of law to base tort liability for negligence." (Opposition at 4.)  The Schmidts concede that they are lacking an essential element of a negligence claim – a duty owed by Fidelity to the Schmidts.  See Cho v. State, 168 P.3d 17, 23 (Haw. 2007).

In their Notice of Additional Citation in further opposition

16

to Fidelity's motion for partial summary judgment, the Schmidts
appear to back away from this position by pointing out that Haw.
Rev. Stat. § 431:20-113 as interpreted in Amfac, Inc. v. Waikiki
Beachcomber Inv. Co., 839 P.2d 10, reconsideration denied, 843
P.2d 144 (Haw. 1992), imposes a duty upon title insurers to
conduct a reasonable title search and disclose any title defects.

Section 431:20-113 specifies title insurance underwriting
standards and provides, in part:

> No title insurance policy may be written unless and
> until the title insurer has caused to be conducted
> a reasonable search and examination of the title,
> and has caused to be made a determination of
> insurability of title in accordance with sound
> underwriting practices.

Haw. Rev. Stat. § 431:20-113.

The purpose of Section 431:20-113 is to discourage title
insurers from issuing policies based on indemnification and not
on the results of a valid title search. See Amfac, Inc., 839
P.2d at 26. Nothing in Section 431:20-113 expressly extends a
title insurer's obligations to an individual or entity other than
the insured.[3] The Schmidts have not provided any case authority

---

[3] Where the title company prepares an abstract of title, in
addition to or apart from issuing a title insurance policy,
Hawaii law recognizes a duty to non-parties to use reasonable
care and avoid negligent misrepresentation. See Chun v. Park,
462 P.2d 905, 909 (Haw. 1969) (title company that prepared a
title search on behalf of seller and issued certificate of title
to seller also owed a duty to the property buyer, even though no
contract existed between the buyer and the title company). Not
surprisingly, part of the discussion on the issue of insurer
liability for failure to search or disclose title defects

in support of the proposition that, even assuming Section 431:20-113 gives rise to a tort duty for title insurance companies issuing preliminary title reports and title insurance policies, independent of, or in addition to, contract liability under the insurance contact[4], such a duty would extend to a non-party to the contract (i.e., a party other than the insured).[5] <u>See</u> Joyce

---

concerns whether title insurance companies issuing preliminary title reports and title insurance policies should be held to the same standard as abstractors of title.  The Court does not decide this issue.  As set forth below, Thomas Schmidt's negligent misrepresentation claim fails as a matter of law because the Schmidts could not have reasonably relied on the preliminary title report or title insurance policy.

[4] Although the Court does not decide this issue in disposing of Fidelity's motion, the Court notes that courts in some other jurisdictions have declined to interpret statutes similar to Section 431:20-113 as imposing liability in tort when title is found to be other than as stated in the title insurance policy. <u>See</u> <u>Culp Const. Co. v. Buildmart Mall</u>, 795 P.2d 650, 654 (Utah 1990) (Utah statute imposing duty to upon title insurer to conduct a reasonable search and examination of title did not impose a duty to abstract titles upon title insurance companies, reasoning "[a] title insurance company's function is generally confined to the practice of insurance, not to the practice of abstracting"); <u>Walker Rogge, Inc. v. Chelsea Title & Guar. Co.</u>, 562 A.2d 208, 217 (N.J. 1989);<u> Brown's Tie & Lumber v. Chicago Title Ins</u>., 764 P.2d 423, 425-27 (Idaho 1988); <u>Horn v. Layers Title Ins. Co.</u>, 557 P.2d 206, 208 (N.M. 1976); <u>Cf</u>. <u>Ruiz v. Garcia</u>, 850 P.2d 972 (N.M. 1993) (title company owed reasonable duty of care to both buyer and seller under N.M. Stat. § 59A-30-11.)

[5] Section 431:20-113 also provides: "no title insurer shall knowingly issue any title insurance policy or commitment to insure without showing all outstanding, enforceable recorded liens or other interests against the property title to which is to be insured."  Plaintiff does not allege fraud.  (Opposition at 4.)  Further, there is no evidence in this case that Fidelity knowingly issued the policy to Option One with knowledge of the state foreclosure action, the Buena Vista mortgage, or the

Palomar, 1 Title Insurance Law §12:9 (noting that "courts have
split regarding whether a title insurer may owe a duty to search
and disclose to parties other than the insured") (2007).

The Court does not decide whether Section 431:20-113 imposes
a tort duty that extends to parties other than the insured.  Even
if Hawaii courts were to recognize a duty owed by a title insurer
to a party other than the insured, the Schmidts could not satisfy
the elements of such a claim.  A key element of the non-insured's
claim is that he reasonably and foreseeably relied on the title
insurer's representation.  <u>See Honolulu Disposal Service, Inc. v.
American Ben. Plan Adm'rs, Inc.</u>, 433 F.Supp.2d 1181, 1186-1187
(D. Haw. 2006) ("plaintiff claiming negligent misrepresentation
must show that: '(1) false information [is] supplied as a result
of the failure to exercise reasonable care or competence in
communicating the information; (2) the person for whose benefit
the information is supplied suffered the loss; and (3) the
recipient relies upon the misrepresentation.'") (quoting <u>Blair v.
Ing</u>, 21 P.3d 452, 474 (2001)).

The courts in <u>Transamerica Title Ins. v. Johnson</u>, 693 P.2d
697 (Wash. 1985) and <u>Title Ins. Co. of Minnesota v. Costain
Arizona, Inc.</u>, 791 P.2d 1086 (Ariz. Ct. App. 1990) rejected non-
insureds' tort claims based on the failure to show reasonable

---

Judgment for IDF. To the contrary, it was the Schmidts who,
knowing full well of the encumbrances, withheld this information
from Option One.

reliance.  In those cases, the courts suggested, in dicta, that a title insurer's duty to accurately search records and disclose the status of title may extend to parties other than the insured. Yet, fatal to any such claim in both cases was the fact that the non-insureds had not detrimentally relied on the title insurers' failure to disclose the title defect.  See Constain Arizona, Inc., 791 P.2d at 1090 ("even if we were to conclude that TICOM owed a tort duty to Constain of searching and disclosing, the record contains no evidence that Constain relied to its detriment on TICOM's failure to disclose that it no longer held title to the 15-foot strip of property."); Johnson, 693 P.2d at 700.

In Johnson, the court found that the non-insured property seller could not have detrimentally relied on the failure to search and disclose because the seller had known of the assessment liens encumbering the property long before the title insurer's issuance of the commitment.  Johnson, 693 P.2d at 700 (even assuming recognition of a duty on the part of the title insurance company extending to other than the insured "[w]here it cannot be shown that the noninsured relied upon the search and disclosure and that this reliance was foreseeable, no liability based on such a duty can be imposed").  Similarly, in Ruiz, 850 P.2d 972, the New Mexico Supreme Court found that the seller had no cause of action against the title insurer for negligent misrepresentation because she could not satisfy the element of

justifiable reliance as a matter of law.  In that case, the seller "admitted that she was aware that her property had been condemned and that she received notice of the condemnation proceedings." Id. at 978.

The same is true in this case.  Thomas Schmidt knew of the Buena Vista mortgage, state foreclosure lawsuit, and Judgment for IDF at the time his son, Damon Schmidt, transferred the property to him and his former wife.  Indeed, the evidence suggests that Thomas Schmidt should have himself disclosed the Buena Vista mortgage and Judgment for IDF to Option One when obtaining the loan, but failed to do so.  Instead, the facts suggest that Thomas Schmidt stood to potentially benefit from Fidelity's mistake by having Fidelity pay off the Buena Vista mortgage in fulfilling its obligations under the lender's title insurance policy.  Consequently, even if, as a matter of law, Fidelity could have a duty to the Schmidts arising in tort, the Schmidts cannot prevail on a claim that Fidelity breached any such duty under the facts of this case.

## CONCLUSION

For the foregoing reasons,

(1)  Defendant/Counterclaimant/Third-party Plaintiff Fidelity National Title Insurance Company's Motion for Partial Summary Judgment Against Plaintiff/Counterclaim Defendant Thomas F. Schmidt on the Complaint, filed July 3, 2007, (Doc. 72)

is **GRANTED;**

(2) Plaintiff Thomas Schmidt's Complaint, filed July 3, 2007, is **DISMISSED WITH PREJUDICE** as to Fidelity National Title Insurance Company**;**

(3) Counterclaimant and Third-party Plaintiff Fidelity National Title Insurance Company's Counterclaim and Third-Party Claim **REMAIN.**

IT IS SO ORDERED.

DATED: June 24, 2008, Honolulu, Hawaii



  /s/ Helen Gillmor             

Chief United States District Judge

---

Thomas F. Schmidt v. Fidelity National Title Ins. Co., et al.; Civ. No. 07-00356; **ORDER GRANTING DEFENDANT/COUNTERCLAIMANT/THIRD-PARTY PLAINTIFF NATIONAL TITLE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF/COUNTERCLAIM DEFENDANT THOMAS F. SCHMIDT ON THE COMPLAINT, FILED JULY 3, 2007**