IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| THOMAS F. SCHMIDT, | ) | CIVIL NO. 07-00356 HG-LEK |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| FIDELITY NATIONAL TITLE | ) | |
| INSURANCE COMPANY, a | ) | |
| California Corporation, JOHN | ) | |
| DOES 1-10, JANE DOES 1-10, DOE | ) | |
| CORPORATIONS, PARTNERSHIPS | ) | |
| and/or OTHER ENTITIES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| FIDELITY NATIONAL TITLE | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Third-Party | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| DAMON L. SCHMIDT and LORINNA | ) | |
| SCHMIDT, | ) | |
| | ) | |
| Third-Party | ) | |
| Defendants. | ) | |
| _____ | ) | |
| | ) | |
| FIDELITY NATIONAL TITLE | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Counter Claimant, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| THOMAS F. SCHMIDT, | ) | |
| | ) | |
| Counterclaim | ) | |
| Defendant. | ) | |
| _____ | ) | |

**ORDER DENYING THIRD-PARTY DEFENDANTS' MOTION TO ABSTAIN BY EITHER DISMISSING FIDELITY NATIONAL TITLE INSURANCE COMPANY'S FIRST AMENDED PLEADINGS FILED JUNE 2, 2008, WITHOUT PREJUDICE AND DISMISSING THIS ENTIRE ACTION WITHOUT PREJUDICE, OR IN THE ALTERNATIVE, BY STAYING THIS ENTIRE ACTION IN FAVOR OF THE TWO RELATED STATE COURT ACTIONS IN THE THIRD CIRCUIT COURT PENDING THEIR FINAL RESOLUTION, AND FOR AN EXTENSION OF TIME TO RESPOND TO THE FIRST AMENDED THIRD-PARTY COMPLAINT UNTIL THE DISPOSITION OF THIS MOTION BY THIS COURT;**

**AND**

**ORDER DENYING THIRD-PARTY DEFENDANTS' APPEAL OF THE JULY 14, 2008 ORDER ENTERED BY THE UNITED STATES MAGISTRATE JUDGE**

Thomas Schmidt brought this action against Fidelity National Title Insurance Co. ("Fidelity"), alleging breach of contract and negligence. The action concerned Fidelity's admitted failure to discover and disclose a mortgage and judgment lien encumbering a property transferred to Thomas Schmidt and his former wife, Lorinna Schmidt, by their son, Damon Schmidt. Plaintiff's Complaint against Fidelity was ultimately dismissed with prejudice by the Court on June 24, 2008.

Prior to the dismissal of Thomas Schmidt's Complaint, Fidelity filed a Counterclaim against Thomas Schmidt and a Third-Party Complaint against Lorinna and Damon Schmidt. Both of Fidelity's pleadings include similar allegations against all three of the Schmidts regarding the transfer of the disputed property. The allegations include, but are not limited to, fraudulent inducement, misrepresentation, fraudulent transfer, conversion, civil conspiracy, and breach of contract. Third-Party

2

Defendants Lorinna and Damon Schmidt now move the Court to abstain from adjudication of Fidelity's Third-Party Complaint and defer to two related Hawaii state court actions. The Third-Party Defendants also move to appeal an Order from Magistrate Judge Leslie E. Kobayashi, which denied Third-Party Defendants' Counter-Motions to vacate three separate garnishee summonses and orders issued by the court between July and September 2007.

Third-Party Defendants Lorinna and Damon Schmidt's Motion to Abstain by Either Dismissing Fidelity National Title Insurance Company's First Amended Pleadings Filed June 2, 2008, Without Prejudice and Dismissing this Entire Action Without Prejudice, or in the Alternative, by Staying this Entire Action in Favor of the Two Related State Court Actions in the Third Circuit Court Pending their Final Resolution, and for an Extension of Time to Respond to the First Amended Third-Party Complaint Until the Disposition of this Motion by this Court (Doc. 108) is **DENIED**.

Third-Party Defendants Lorinna and Damon Schmidt's Appeal of the July 14, 2008 Order Entered by the Honorable Leslie E. Kobayashi, United States Magistrate Judge (Doc. 109) is **DENIED.**

## PROCEDURAL HISTORY

On July 3, 2007, Thomas S. Schmidt filed the Complaint

3

against Fidelity National Title Insurance Company ("Fidelity").
(Doc. 1, "Complaint".)

On July 25, 2007, Fidelity filed an Answer and Counter-
Claim against Thomas S. Schmidt. (Doc. 5.) Fidelity also filed a
Third-Party Complaint against Damon and Lorinna Schmidt ("Third-
Party Defendants"). (Doc. 5.)

On July 31, 2007, Fidelity filed an Ex Parte
Application for Issuance of Prejudgment Garnishee Summons. (Doc.
7, "First Application".) The First Application was directed to
two entities: (1) Fidelity National Title & Escrow of Hawaii,
Inc. ("Fidelity Escrow"), for proceeds relating to the sale of
two separate properties held in safekeeping for Thomas Schmidt
and/or Damon Schmidt; and 2) Goodsill Anderson Quinn & Stifel LLP
("Goodsill"), for amounts owed to Damon Schmidt as his employer.
On the same day, the Garnishee Summons and Order was issued by
the Court, ordering the two named entities to hold and secure up
to 120% of Fidelity's claim of $710,021.18. (Doc. 7, Part 3.) The
Garnishee Summons and Order, however, expressly excluded wages.

On September 11, 2007, Fidelity filed an Application
for Prejudgment Garnishee Process and Issuance of Garnishee
Summons and Order. (Doc. 24, "Second Application".) In the Second
Application, Fidelity sought the issuance of Garnishee Summons
and Order to Goodsill against Damon Schmidt. The Second
Application sought to include the "wages" owed by Goodsill to

4

Damon Schmidt, as defined in Hawaii Revised Statutes § 652-1(a). On the same day, the Garnishee Summons and Order was issued by the Court, ordering Goodsill to hold and secure a portion of Damon Schmidt's wages. (Doc. 24, Part 14.)

On September 18, 2007, Fidelity filed another Ex Parte Application for Prejudgment Garnishee Process and Issuance of Garnishee Summons and Order. (Doc. 27, "Third Application".) The Third Application alleged that all three Schmidts may have wrongfully transferred the escrow account at Fidelity Escrow, which was subject to the court's July 31, 2007 Garnishee Summons and Order, to Hawaii Escrow & Title, Inc. ("Hawaii Escrow"). On the same day, the Garnishee Summons and Order was issued by the Court, ordering Hawaii Escrow & Title, Inc. to hold and secure up to 120% of Fidelity's claim of $710,021.18. (Doc. 27, Part 14.)

On June 2, 2008, Fidelity filed a First Amended Answer ("Answer") and First Amended Counterclaim ("Counterclaim") against Thomas Schmidt. (Doc. 99.) Fidelity also filed a First-Amended Third-Party Complaint ("Third-Party Complaint") against Third-Party Defendants Lorinna and Damon Schmidt. (Doc. 99.)

On June 24, 2008, the District Court issued an Order Granting Defendant/Counterclaimant/Third-Party Plaintiff Fidelity National Title Insurance Company's Motion for Partial Summary Judgment Against Plaintiff/Counterclaim Defendant Thomas F. Schmidt on the Complaint, filed July 3, 2007. (Doc. 106, "June

24, 2008 Order".) The Court also dismissed all of Thomas Schmidt's other claims against Fidelity with prejudice. (<u>Id.</u>) The Court held that Thomas Schmidt's contract and tort claims against Fidelity both failed as a matter of law. Thomas Schmidt was not a named insured under any contract with Fidelity, and the facts did not give rise to an implied contract or to any third-party beneficiary rights. Thomas Schmidt's tort claim also failed because he could not have justifiably relied on a title report issued by Fidelity which failed to disclose the mortgage and judgment lien on the disputed property. Thomas Schmidt knew of the mortgage and judgment lien because he testified in the state foreclosure proceedings regarding the disposition of the disputed property.

On July 14, 2008, the Honorable Leslie E. Kobayashi, United States Magistrate Judge, issued an Order Denying Third-Party Defendants' Counter-Motions. (Doc. 107, "July 14, 2008 Order".) Third-Party Defendants Lorinna and Damon Schmidt's Counter-Motions sought to vacate the three prior orders from the court granting Fidelity's applications for garnishment. The Magistrate Judge's Order stated that probable validity existed to sustain Fidelity's claims against Third-Party Defendants. The Order also stated that Third-Party Defendants did not establish that any of the property subject to the garnishee summonses and orders was exempt from execution. In addition, the Magistrate

6

Judge found that Fidelity's applications for garnishment were not frivolous.

On July 25, 2008, Third-Party Defendants Lorinna and Damon Schmidt filed a Motion to Abstain by Either Dismissing Fidelity National Title Insurance Company's First Amended Pleadings Filed June 2, 2008, Without Prejudice and Dismissing this Entire Action Without Prejudice, or in the Alternative, by Staying this Entire Action in Favor of the Two Related State Court Actions in the Third Circuit Court Pending their Final Resolution, and for an Extension of Time to Respond to the First Amended Third-Party Complaint Until the Disposition of this Motion by this Court. (Doc. 108, "Motion to Abstain".)

Also on July 25, 2008, Third-Party Defendants Lorinna and Damon Schmidt filed a Local Rule 74.1 Written Statement of Appeal to the Honorable Helen Gillmor, Presiding United States Chief District Judge, from the July 14, 2008, "Order Denying Third-Party Defendants' Counter-Motions," Entered by the Honorable Leslie E. Kobayashi, United States Magistrate Judge. (Doc. 109, "Appeal of Magistrate Judge's Order".)

On August 14, 2008, Fidelity filed an Opposition to Damon and Lorinna Schmidt's Motion to Abstain, Filed July 25, 2008. (Doc. 120, "Opposition to Motion to Abstain".)

Also on August 14, 2008, Fidelity filed an Opposition to Damon and Lorinna Schmidt's Written Statement of Appeal of the

7

July 14, 2008 Order Denying Third-Party Defendants' Counter-Motions. (Doc. 121, "Opposition to Appeal of Magistrate Judge's Order".) Fidelity also filed a Declaration of Lerisa L. Heroldt, an attorney for Fidelity. (Doc. 121.)

On August 25, 2008, Third-Party Defendants Lorinna and Damon Schmidt filed their Reply in Further Support of Motion to Abstain by Either Dismissing Fidelity National Title Insurance Company's First Amended Pleadings Without Prejudice and Dismissing this Entire Action Without Prejudice, or in the Alternative, by Staying this Entire Action in Favor of the Two Related State Court Actions in the Third Circuit Court Pending Their Final Resolution, and for an Extension of Time to Respond to the First Amended Third-Party Complaint until the Disposition of this Motion by this Court. (Doc. 131, "Reply for Motion to Abstain".)

Also on August 25, 2008, Third-Party Defendants Lorinna and Damon Schmidt filed their Reply in Further Support of Local Rule 74.1 Written Statement of Appeal to the Honorable Helen Gillmor, Presiding United States Chief District Judge, from the July 14, 2008, "Order Denying Third-Party Defendants' Counter-Motions," Entered by the Honorable Leslie E. Kobayashi, United States Magistrate Judge. (Doc. 132, "Reply for Appeal of Magistrate Judge's Order".)

**BACKGROUND**

The property at issue in this case is real property located at 73-4613 Kukuki Street in Kailua-Kona, Hawaii, specifically identified as Tax Map Key No. (3) 7-3-024-71-02 ("Property").

Damon Schmidt executed a Construction and Permanent Real Property Mortgage and Financing Statement, dated July 14, 2000, in favor of IndyMac Bank, F.S.B. ("IndyMac" and "IndyMac Mortgage"). The IndyMac Mortgage encumbered the Property in the amount of $498,000.00.

On September 4, 2001, Damon Schmidt executed a Promissory Note for $250,000.00 in favor of Clearwater Investments, LLC ("Clearwater" and "Clearwater Promissory Note"). He also executed a second mortgage encumbering the Property to secure the Clearwater Promissory Note ("Clearwater Mortgage"). The Clearwater Mortgage was junior to the IndyMac Mortgage. Buena Vista Investors, LLC ("Buena Vista") subsequently purchased the Clearwater Promissory Note and Mortgage.[1]

On June 13, 2003, after Damon Schmidt defaulted on the Clearwater Promissory Note and Mortgage, Buena Vista commenced

_____

[1]   As a result of this transaction, Buena Vista owned the Clearwater Mortgage. The parties, however, continue to refer to this mortgage as the "Clearwater Mortgage" in their briefing papers. In accordance with the parties' briefing papers, the Court also continues to refer to the mortgage as the "Clearwater Mortgage."

foreclosure proceedings in Hawaii state court. Thomas Schmidt was called as a testifying witness in this proceeding. (Fidelity CSF at Exh. 2, "Amended Findings of Fact, Conclusions of Law, and Order," <u>Buena Vista Investors, LLC v. Damon Schmidt, et al.</u>).

On July 29, 2005, a Judgment for Interlocutory Decree of Foreclosure was issued in <u>Buena Vista Investors, LLC v. Damon Schmidt, et al.</u>, Civ. No. 03-1-0097K, Third Circuit Court, State of Hawaii, and recorded in the Bureau of Conveyances, State of Hawaii, as Document No. 2006-009107 on January 13, 2006. (Fidelity CSF at Exh. 1.) The Judgment for Interlocutory Decree of Foreclosure found in favor of Buena Vista, and foreclosed the Clearwater Mortgage and ordered the Property to be sold at a public auction. (<u>Id.</u>) The proceeds of the sale were subject to the senior IndyMac Mortgage. (<u>Id.</u>)

After the entry of the Judgment for Interlocutory Decree of Foreclosure, but before the Property was sold, Damon Schmidt executed an apartment deed transferring the Property to his parents, Thomas and Lorinna Schmidt. (Fidelity CSF at Exh. 3 ("Apartment Deed").) The Apartment Deed was recorded in the Bureau of Conveyances on October 25, 2005. At the time of the transfer of the Property, Damon Schmidt was still liable to IndyMac, for the original mortgage, and to Buena Vista, for the foreclosed Clearwater Mortgage.

On October 13, 2005, Thomas and Lorinna Schmidt

obtained a $1,105,000.00 mortgage on the Property from Option One Mortgage Corporation ("Option One"), which was recorded in the Bureau of Conveyances. (Fidelity CSF at Exh. 4 ("Option One Mortgage"). The proceeds of the Option One Mortgage were used to satisfy the Indymac Mortgage, but were not sufficient to pay the entire foreclosed Clearwater Mortgage or the Judgment for Interlocutory Decree of Foreclosure. (Counterclaim at ¶ 20.)

In connection with the Option One Mortgage, Fidelity issued a lender's title insurance policy to Option One. (Fidelity CSF at Exh. 5 ("Fidelity Policy").) The Fidelity Policy insured Option One against "loss or damage" sustained due to "[a]ny defect in or lien or encumbrance on the title" and "[t]he priority of any lien or encumbrance over the lien of the insured [Option One]." (Id.)

Fidelity's pleadings state that it did not discover the Clearwater Mortgage or the Judgment for Interlocutory Decree of Foreclosure encumbering the Property due to an administrative mistake in its title search. (Counterclaim at ¶ 19.) According to Fidelity, the three members of the Schmidt family failed to disclose both the Clearwater Mortgage and the Judgment for Interlocutory Decree of Foreclosure to either Option One or Fidelity. (Id.)

In order to protect Option One's position under the Fidelity Policy, Fidelity purchased the Clearwater Promissory

11

Note, the Clearwater Mortgage, and the Judgment for Interlocutory Decree of Foreclosure from Buena Vista for $623,021.18. (Id. at ¶ 21.) Fidelity also paid Buena Vista's attorney's fees of $87,000.00. (Id.) On March 13, 2006, Buena Vista assigned the Clearwater Promissory Note, the Clearwater Mortgage, and all of its rights, title, and interest in the Judgment for Interlocutory Decree of Foreclosure to Fidelity. (Id. at ¶ 22; Doc. 24 at Exh. 8 & 9.)

Fidelity foreclosed on the Property and Judge Ibarra in the Third Circuit Court, State of Hawaii, approved the sale price of $800,000 on February 28, 2008. (Doc. 121, Declaration of Lerisa L. Heroldt at ¶ 16.) At the time of the closing, the total amount owed to Fidelity by Damon Schmidt had increased in value from the $710,021.18 originally owed when Buena Vista assigned its interest in the Judgment for Interlocutory Decree of Foreclosure to Fidelity in March 2006. (See Fidelity CSF at Exh. 1, Judgment for Interlocutory Decree of Foreclosure.)

In June 2008, the commissioner appointed by the Hawaii state court, Robert D. Triantos, Esq., released the foreclosure sale proceeds to Fidelity. (Doc. 121, Declaration of Lerisa L. Heroldt at ¶ 16.) The amount of $736,356.34 was applied to the judgment for Interlocutory Decree of Foreclosure, and $57,903.87 was applied to Fidelity's award of attorneys' fees and costs. (Id.) Fidelity alleges that a deficiency in the amount of

12

$89,067.76 still exists against Third-Party Defendant Damon Schmidt. (Id.)

Damon Schmidt has challenged the foreclosure proceeding, Buena Vista Investors, LLC v. Damon Schmidt, et al., in a new action in Hawaii state court. On May 8, 2008, Damon Schmidt filed the lawsuit, Damon Lyum Schmidt v. Jerry A. Ruthruff, et al., Civ. No. 08-1-0136K, Third Circuit Court, State of Hawaii, alleging fraud on the court. Fidelity has been named as a defendant in the new state court action.

## STANDARD OF REVIEW

### I.   Motion to Dismiss for Lack of Subject Matter Jurisdiction

The Defendants seek dismissal of Plaintiffs' Complaint for lack of subject matter jurisdiction. A case is properly dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) when the court lacks the constitutional or statutory power to adjudicate the case.

A court may consider extrinsic evidence in a 12(b)(1) motion to dismiss including:

> affidavits or any other evidence properly before the court .... It then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction.

Ass'n of American Medical Colleges v. United States, 217 F.3d

770, 778 (9th Cir. 2000) (<u>citing</u> <u>St. Clair v. City of Chico</u>, 880 F.2d 199, 201 (9th Cir. 1989) (further citations omitted)).

In evaluating a complaint pursuant to a motion to dismiss, the court must presume all factual allegations to be true and draw all reasonable inferences in favor of the non-moving party.  <u>Usher v. City of Los Angeles</u>, 828 F.2d 556, 561 (9th Cir. 1987); <u>see</u> <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974) (the complaint must be liberally construed, giving the plaintiff the benefit of all proper inferences); <u>Wileman Bros. & Elliott, Inc. v. Giannini</u>, 909 F.2d 332, 334 (9th Cir. 1990).

Conclusory allegations of law and unwarranted inferences, though, are insufficient to defeat a motion to dismiss.  <u>Pareto v. F.D.I.C</u>, 139 F.3d 696, 699 (9th Cir. 1998); <u>In re VeriFone Securities Litigation</u>, 11 F.3d 865, 868 (9th Cir. 1993) (conclusory allegations and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim; <u>Western Mining Council v. Watt</u>, 643 F.2d 618, 624 (9th Cir. 1981), <u>cert denied</u>, 454 U.S. 1031 (1981) (the Court does not "necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations").  Additionally, the Court need not accept as true allegations that contradict matters properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint.  <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir.

2001).

        When the motion to dismiss is a factual attack on

subject matter jurisdiction, no presumptive truthfulness attaches

to plaintiff's allegations. The existence of disputed material

facts will not preclude the trial court from evaluating for

itself the existence of subject matter jurisdiction in fact.

Thornhill Pub. Co., Inc. v. General Tel. & Electronics Corp., 594

F.2d 730, 733 (C.A.Wash. 1979); Safe Air for Everyone v. Meyer,

373 F.3d 1035, 1039 (9th Cir. 2004), cert. denied, 2005 WL 282138

(May 2, 2005).

        The party seeking to invoke the jurisdiction of the

Court has the burden of establishing that jurisdiction exists.

Scott v. Breeland, 792 F.2d 925, 927 (9th Cir. 1986); Thornhill,

594 F.2d at 733. "[A] Rule 12(b)(1) motion can attack the

substance of a complaint's jurisdictional allegations despite

their formal sufficiency," whereupon the plaintiff must "present

affidavits or any other evidence necessary to satisfy its

burden." St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir.

1989) (holding that in a factual attack on subject matter

jurisdiction, the Court may accept and evaluate evidence to

determine whether jurisdiction exists).


        II.  Motion to Dismiss for Failure to State a Claim
             Upon Which Relief Can Be Granted

        The Court may dismiss a complaint as a matter of law

pursuant to Fed.R.Civ.P., Rule 12(b)(6) where it fails "to state a claim upon which relief can be granted."  Rule 8(a)(2) of the Fed.R.Civ.P. requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  This complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that recovery is very remote and unlikely"); Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996)("[a]ll that is required is that the complaint gives 'the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests.'") (quoting Datagate, Inc. v. Hewlett-Packard Co., 941 F.2d 864, 870 (9th Cir. 1991)).

In evaluating a complaint when considering a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the Court must presume all factual allegations of material fact to be true and draw all reasonable inferences in favor of the non-moving party.  Roe v. City of San Diego, 356 F.3d 1108, 1111-12 (9th Cir. 2004); Pareto v. F.D.I.C., 139 F.3d 696, 699 (9th Cir. 1998); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (the complaint must be liberally construed, giving the plaintiff the benefit of all proper inferences).

Conclusory allegations of law and unwarranted

16

inferences, though, are insufficient to defeat a motion to dismiss. <u>Pareto</u>, 139 F.3d at 699; <u>In re VeriFone Securities Litigation</u>, 11 F.3d 865, 868 (9th Cir. 1993) (conclusory allegations and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim); <u>Western Mining Council v. Watt</u>, 643 F.2d 618, 624 (9th Cir.), <u>cert denied</u>, 454 U.S. 1031 (1981) (the Court does not "necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations"). Additionally, the Court need not accept as true allegations that contradict matters properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint. <u>Sprewell</u>, 266 F.3d at 988.

In <u>Bell Atl. Corp. v. Twombly</u>, 127 S.Ct. 1955 (2007), the United States Supreme Court recently addressed the pleading standards under the Federal Rules of Civil Procedure in the anti-trust context. Numerous federal courts have considered <u>Twombly's</u> effect on the federal pleading standard, namely whether <u>Twombly</u> established a blanket heightened pleading standard for all cases. The Court agrees with those courts that have held it does not.

A few weeks after <u>Twombly</u>, the Supreme Court decided <u>Erickson v. Pardus</u>, 127 S.Ct. 2197, 2200 (2007). In <u>Erickson</u>, a prisoner civil rights case, the Court reiterated that Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to

17

relief."

Recently, the Ninth Circuit Court of Appeals in <u>Skaff v. Meridien North America Beverly Hills, LLC</u>, 506 F.3d 832 (9th Cir. 2007) applied <u>Erickson</u> in the Americans with Disabilities Act context, and reaffirmed the applicability of Rule 8's fair notice pleading standard.  The Ninth Circuit clarified that Rule 8's fair notice pleading standard, as opposed to a heightened pleading standard, applies unless there is an explicit requirement in a statute or federal rule.  <u>Id.</u> at 840-41 ("[T]he Supreme Court has repeatedly instructed us not to impose such heightened standards in the absence of an explicit requirement in a statute or federal rule.") (<u>citing</u> <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 515, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (rejecting heightened pleading standard for Title VII employment discrimination suits)); <u>Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit</u>, 507 U.S. 163, 164, (1993) (rejecting heightened pleading standard for § 1983 suits asserting municipal liability); Private Securities Litigation Reform Act of 1995, Pub.L. No. 104-67, § 101(b), 109 Stat. 737, 747 (imposing heightened pleading standard for securities fraud class actions) (codified at 15 U.S.C. § 78u-4(b)(1)-(2)); Federal Rule of Civil Procedure 9(b) (imposing a heightened pleading standard for all complaints alleging fraud or mistake).

III. Appeal of a Magistrate Judge's Order

A district court must defer to a magistrate judge's non-dispositive order unless the order is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed.R.Civ.P. 72(a); L.R. 74.1; Osband v. Woodford, 290 F.3d 1036, 1041 (9th Cir. 2002). The district court should review the magistrate judge's order for "clear error." Grimes v. San Francisco, 951 F.2d 236, 241 (9th Cir. 1991). The district court may not simply substitute its judgment for that of the magistrate judge. Id. The district judge may also reconsider sua sponte any matter determined by a magistrate judge. L.R. 74.1.

**ANALYSIS**

I.   Motion to Abstain

Third-Party Defendants Lorinna and Damon Schmidt have filed the Motion to Abstain in order to dismiss the entire action without prejudice, or alternatively, to stay the action in favor of the two related Hawaii state court proceedings. Movants argue for the application of two abstention doctrines, the Younger Abstention Doctrine and the Colorado River Abstention Doctrine, to this action by the Court.

The Supreme Court has stated that the various abstention doctrines "represent[] the sort of 'threshold question' [that] may be resolved before addressing jurisdiction."

19

<u>Tenet v. Doe</u>, 544 U.S. 1, 6 n.4 (2005); <u>see</u> <u>also</u> <u>Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.</u>, 477 U.S. 619, 626 (1986). The federal courts, however, have also considered abstention arguments within the framework of a motion to dismiss for lack of subject matter jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(1), and a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6). <u>See</u>, <u>e.g</u>, <u>Steel Co. v. Citizens for a Better Env.</u>, 523 U.S. 83, 100 n.3 (1998) (Younger abstention is "treated as jurisdictional" by the Court); <u>Ambat v. City & County of San Francisco</u>, 2007 U.S. Dist. LEXIS 80853, at *7 (N.D.Cal. 2007) (Younger Abstention Doctrine properly raised in a motion to dismiss for lack of subject matter jurisdiction); <u>Jonathan Club v. Los Angeles</u>, 680 F.Supp. 1405, 1408-1409 (C.D.Cal. 1988) (Younger Abstention Doctrine properly raised in a motion to dismiss for failure to state a claim upon which relief can be granted).

A.   <u>Younger Abstention Doctrine</u>

Third-Party Defendants Lorinna and Damon Schmidt's Motion to Abstain relies, in part, upon the abstention doctrine explained in <u>Younger v. Harris</u>. 401 U.S. 37 (1971). In <u>Younger</u>, the Supreme Court held that federal courts should not enjoin pending state criminal prosecutions, absent extraordinary

20

circumstances, for reasons of comity and federalism. Both principles require that federal courts give "proper respect for state functions" and allows state courts "to perform their separate functions in their separate ways." Middlesex County Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 431 (1982) (internal quotations omitted). While Younger involved a state court criminal proceeding, the Supreme Court extended the Younger Abstention Doctrine to state court civil suits and state administrative proceedings. New Orleans Pub. Serv., Inc. v. Council of New Orleans, 491 U.S. 350, 368 (1989); Huffman v. Pursue, Ltd., 420 U.S. 592, 604 (1975). The Younger Abstention Doctrine now applies in "the civil context if the case implicates 'important state interests.'" Rowland v. Novus Fin. Corp., 949 F.Supp. 1447, 1456 (D. Haw. 1996) (quoting Middlesex, 457 U.S. at 432).[2]

Three requirements must be met for the Court to abstain under the Younger Abstention Doctrine: (1) the state court proceedings must be ongoing; (2) they must implicate important state interests; and (3) they must offer an adequate opportunity to litigate federal constitutional issues. Fort Belknap Indian Community v. Mazurek, 43 F.3d 428, 431 (9th Cir. 1994); Kenneally v. Lungren, 967 F.2d 329, 331 (9th Cir. 1992). In addition to

_____

[2]     The "important state interests" threshold can be met in a civil suit involving only private parties. See, e.g., Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 10 (1987).

these three requirements, "Younger applies only when the relief the plaintiff seeks in federal court would 'interfere' with the ongoing state judicial proceeding." <u>Green v. City of Tucson</u>, 255 F.3d 1086, 1094 (9th Cir. 2001) (en banc); <u>Columbia Basin Apt. Ass'n v. City of Pasco</u>, 268 F.3d 791, 799 (9th Cir. 2001).

In analyzing the first requirement of the Younger Abstention Doctrine, the Ninth Circuit has stated that in addition to determining whether state court proceedings are ongoing, the "critical question is . . . whether 'the state proceedings were underway before initiation of the federal proceedings.'" <u>Kitchens v. Bowen</u>, 825 F.2d 1337, 1341 (9th Cir. 1987) (citing <u>Fresh Int'l Corp. v. Agricultural Labor Relations Bd.</u>, 805 F.2d 1353, 1358 (9th Cir. 1985)).

Application of the Younger Abstention Doctrine must be denied in this action because the first requirement has not been met. The first state court action related to this proceeding, <u>Buena Vista Investors, LLC v. Damon Schmidt, et al.</u>, Civ. No. 03-1-0097K, Third Circuit Court, State of Hawaii, is very near completion. The Judgment for Interlocutory Decree of Foreclosure was issued on July 29, 2005. The sale of the Property was confirmed, title has passed to the new owner, and the sale proceeds have been disbursed. (Doc. 121, Declaration of Lerisa L. Heroldt at ¶ 16.) In addition, Damon Schmidt's appeal of the Judgment for Interlocutory Decree of Foreclosure was dismissed by

the Supreme Court of the State of Hawaii on May 9, 2006.
(Opposition to Motion to Abstain at Ex. 3.) The only outstanding
issue left in this state court action is the formal entry of a
deficiency judgment against Damon Schmidt. (Opposition to Motion
to Abstain at 22.) At this stage of the litigation, the state
court proceedings cannot be considered 'ongoing'.

Alternatively, the second state court action related to
this proceeding, Damon Lyum Schmidt v. Jerry A. Ruthruff, et al.,
Civ. No. 08-1-0136K, Third Circuit Court, State of Hawaii, was
filed by Damon Schmidt on May 8, 2008 - approximately 10 months
after the commencement of the federal court action. The second
state court action was not underway before initiation of this
action in federal court. In addition, a significant amount of
judicial resources have already been expended by this Court in
adjudicating this matter.

The Court declines to abstain pursuant to the Younger
Abstention Doctrine because the first requirement has not been
met. Discussion of the second and third requirements of the
Younger Abstention Doctrine is unnecessary.


B.   Colorado River Abstention Doctrine

Third-Party Defendants Lorinna and Damon Schmidt's
Motion to Abstain also relies upon the abstention doctrine
explained in Colorado River Water Conservation District v. United

23

<u>States</u>. 424 U.S. 800, 818-819 (1976). This doctrine is used to determine whether to stay a federal action in favor of pending state court proceedings involving the same subject matter. <u>Washington Street Corp. v. Lusardi</u>, 976 F.2d 587, 588-589 (9th Cir. 1992). The federal courts have abstained pursuant to the Colorado River Abstention Doctrine only in exceptional circumstances. <u>Rowland</u>, 949 F.Supp. at 1457.

In analyzing the Colorado River Abstention Doctrine, the Ninth Circuit has held that "in proceedings *in rem* or *quasi in rem*[3], the forum that first assumes custody of the property at issue has exclusive jurisdiction to proceed." <u>Washington Street Corp.</u>, 976 F.2d at 589. The state foreclosure action, <u>Buena Vista Investors, LLC v. Damon Schmidt, et al.</u>, Civ. No. 03-1-0097K, Third Circuit Court, State of Hawaii, is an *in rem* proceeding. The Colorado River Abstention Doctrine, however, is inapplicable because this federal court action is not an *in rem* or *quasi in rem* proceeding. <u>Rowland</u>, 949 F.Supp. at 1457 (Colorado River Abstention Doctrine does not apply where the federal court action is not an *in rem* proceeding). Fidelity's Counterclaim and Third-Party Complaint do not seek to resolve the issue of title to any

---

[3]    An "action *in rem*" is defined as "an action determining the title to property . . ." An "action *quasi in rem*" is defined as "an action brought against the defendant personally, with jurisdiction based on an interest in property, the objective being to deal with the particular property or to subject the property to the discharge of the claims asserted." (Black's Law Dictionary, Eighth Ed. 2004)

property, but instead, seek damages stemming from the various claims alleged (e.g. fraudulent inducement, negligent misrepresentation, unjust enrichment, et cetera). A suit for damages is not an action *in rem* or *quasi in rem*.

The Court declines to abstain pursuant to the Colorado River Abstention Doctrine. Third-Party Defendants Lorinna and Damon Schmidt's Reply Brief for the Motion to Abstain does not address Fidelity's arguments regarding the inapplicability of the Colorado River Abstention Doctrine. Third-Party Defendants Lorinna and Damon Schmidt appear to have abandoned this line of argument.

C.   Extension of Time to Respond to the First Amended Third-Party Complaint

Third-Party Defendants Lorinna and Damon Schmidt request an extension of time to respond to the first amended Third-Party Complaint. Third-Party Defendants Lorinna and Damon Schmidt have not shown good cause for this extension, pursuant to F.R.C.P. 6(b)(1). In fact, the Court has not been given any reason at all for this extension. Third-Party Defendants Lorinna and Damon Schmidt's request for an extension of time to respond to the first amended Third-Party Complaint is **DENIED.**

Pursuant to F.R.C.P. 12(a)(4)(A), Third-Party Defendants Lorinna and Damon Schmidt must serve Fidelity with a responsive pleading 10 days after notice of the Court's Order.

25

II.   <u>Appeal of Magistrate Judge's July 14, 2008 Order</u>

Third-Party Defendants Lorinna and Damon Schmidt appeal the July 14, 2008 Order Denying Third-Party Defendants' Counter-Motions, entered by the Honorable Leslie E. Kobayashi, United States Magistrate Judge. (Doc. 107, "July 14, 2008 Order".) The Counter-Motions denied by the July 14, 2008 Order sought to vacate three separate Garnishee Summonses and Orders issued by the Magistrate Judge between July and September 2007 against Thomas and Damon Schmidt. The Counter-Motions also requested that the Magistrate Judge issue an order to show cause why Fidelity and its attorneys should not be sanctioned for the filing of frivolous applications for prejudgment garnishment.

A.   <u>Garnishee Summonses and Orders</u>

Fed.R.Civ.P. 64 allows for the remedy of garnishment if such remedy is available under the state law where the federal court is located. Haw. Rev. Stat. § 652-1 allows for prejudgment garnishment; Haw. Rev. Stat. § 652-1.5 sets forth the applicable procedure. In particular, the court must determine "whether probable validity exists to sustain the validity of the creditor's claim and whether any of the property or choses in the possession of the garnishee is, to the same degree of certainty, exempt from execution." Haw. Rev. Stat. § 652-1.5(d). In addition, Hawaii state law requires that a party seeking the

26

remedy of garnishment also establish a debtor-creditor
relationship where an ascertainable monetary amount is owed.
Welch v. Woods, 47 Haw. 252, 254 (1963); Frank F. Fasi Supply Co.
v. Wigwam Inv. Co., 308 F.Supp. 59, 64 (D. Haw. 1969).

     In the July 14, 2008 Order, the Magistrate Judge held
that there was probable validity to sustain Fidelity's claims
against all three members of the Schmidt family. (July 14, 2008
Order at 21.) This decision is not clearly erroneous, because it
is more likely than not that all three members of the Schmidt
family knew of the Clearwater Mortgage, knew of the state
foreclosure action against the Property, and knew of the Judgment
for Interlocutory Decree of Foreclosure. (See, e.g., Fidelity CSF
at Exh. 2.) In addition, it is more likely than not that all
three members of the Schmidt family failed to inform either
Fidelity or Option One about the encumbrances on the Property.

     The Magistrate Judge also held that the money owed by
(1) Fidelity National Title & Escrow of Hawaii, Inc. ("Fidelity
Escrow"), (2) Goodsill Anderson Quinn & Stifel LLP ("Goodsill"),
and (3) Hawaii Escrow & Title, Inc. ("Hawaii Escrow") to Damon
and/or Thomas Schmidt was subject to prejudgment garnishment
pursuant to Haw. Rev. Stat. § 652-1(a). (Id.) The language of the
statute does not indicate that this decision was clearly
erroneous.

     A debtor-creditor relationship had also been

27

established between Damon Schmidt and Fidelity by the time the July 14, 2008 Order was issued by the Magistrate Judge. The foreclosed Property was sold on February 28, 2008 for $800,000. (Doc. 121, Declaration of Lerisa L. Heroldt at ¶ 16.) In June 2008, the foreclosure sale proceeds were released to Fidelity. (Id.) Fidelity alleges that the sale proceeds, however, did not cover the entire amount owed to Fidelity pursuant to the terms of the Judgment for Interlocutory Decree of Foreclosure. (See Fidelity CSF at Exh. 1.) According to Fidelity, it was still owed $89,067.76 by Damon Schmidt. (Doc. 121, Declaration of Lerisa L. Heroldt at ¶ 16.) This deficiency created the requisite debtor-creditor relationship between the two parties.

The Magistrate Judge's decision to deny Third-Party Defendants Lorinna and Damon Schmidt's Counter-Motions was properly decided and is fully supported by the law. The July 14, 2008 Order is affirmed by the Court.


    B.    <u>Frivolous Applications for Prejudgment Garnishment</u>

Fed.R.Civ.P. 11(c) allows the Court to impose an appropriate sanction upon any attorney, law firm, or party who files a frivolous motion. Third-Party Defendants Lorinna and Damon Schmidt's Counter-Motion requested that the Magistrate Judge, pursuant to Fed.R.Civ.P. 11(c), issue an Order to Show Cause why Fidelity and its attorneys should not be sanctioned for

the filing of frivolous applications for prejudgment garnishment.

In light of the fact that the July 14, 2008 Order is affirmed by the Court, there is no reason for sanctions against Fidelity or its attorneys. The Magistrate Judge's decision is affirmed.

## CONCLUSION

Third-Party Defendants Lorinna and Damon Schmidt's Motion to Abstain by Either Dismissing Fidelity National Title Insurance Company's First Amended Pleadings Filed June 2, 2008, Without Prejudice and Dismissing this Entire Action Without Prejudice, or in the Alternative, by Staying this Entire Action in Favor of the Two Related State Court Actions in the Third Circuit Court Pending their Final Resolution, and for an Extension of Time to Respond to the First Amended Third-Party Complaint Until the Disposition of this Motion by this Court (Doc. 108) is **DENIED.**

Third-Party Defendants Lorinna and Damon Schmidt must serve Fidelity with a responsive pleading to the First Amended Third-Party Complaint by December 10, 2008.

Third-Party Defendants Lorinna and Damon Schmidt's Appeal of the July 14, 2008 Order Entered by the Honorable Leslie E. Kobayashi, United States Magistrate Judge (Doc. 109) is **DENIED.**

After the issuance of this Court's Order, the following causes of action remain between the parties:

I.   Fidelity's First Amended Third-Party Complaint against Third-Party Defendants Lorinna and Damon Schmidt:

   (1) Fraudulent Inducement against Lorinna Schmidt;

   (2) Negligent Misrepresentation against Lorinna Schmidt;

   (3) Misrepresentation against Damon Schmidt;

   (4) Fraudulent Transfer against Lorinna and Damon Schmidt;

   (5) Conversion against Lorinna and Damon Schmidt;

   (6) Unjust Enrichment against Lorinna and Damon Schmidt;

   (7) Disgorgement against Lorinna Schmidt;

   (8) Disgorgement against Damon Schmidt;

   (9) Assumpsit against Lorinna and Damon Schmidt;

   (10) Civil Conspiracy;

   (11) Breach of Contract against Lorinna Schmidt; and

   (12) Breach of Covenant against Lorinna Schmidt.

II.  Fidelity's First Amended Counterclaim against Thomas Schmidt:

(1) Fraudulent Inducement;

(2) Negligent Misrepresentation;

(3) Fraudulent Transfer;

(4) Conversion;

(5) Unjust Enrichment;

(6) Disgorgement;

(7) Assumpsit;

(8) Civil Conspiracy;

(9) Breach of Contract; and

(10) Breach of Covenants.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, November 26, 2008.



 /s/ Helen Gillmor
Chief United States District Judge

THOMAS F. SCHMIDT V. FIDELITY NATIONAL TITLE INSURANCE COMPANY, ET AL.; CIVIL NO. 07-00356 HG-LEK; **ORDER DENYING THIRD-PARTY DEFENDANTS' MOTION TO ABSTAIN BY EITHER DISMISSING FIDELITY NATIONAL TITLE INSURANCE COMPANY'S FIRST AMENDED PLEADINGS FILED JUNE 2, 2008, WITHOUT PREJUDICE AND DISMISSING THIS ENTIRE ACTION WITHOUT PREJUDICE, OR IN THE ALTERNATIVE, BY STAYING THIS ENTIRE ACTION IN FAVOR OF THE TWO RELATED STATE COURT ACTIONS IN THE THIRD CIRCUIT COURT PENDING THEIR FINAL RESOLUTION, AND FOR AN EXTENSION OF TIME TO RESPOND TO THE FIRST AMENDED THIRD-PARTY COMPLAINT UNTIL THE DISPOSITION OF THIS MOTION BY THIS COURT; ORDER DENYING THIRD-PARTY DEFENDANTS' APPEAL OF THE JULY 14, 2008 ORDER ENTERED BY THE UNITED STATES MAGISTRATE JUDGE**